THE BOROUGH OF BERGENFIELD ET AL., PETITIONERS,
v. J. H. THAYER MARTIN, STATE TAX COMMISSIONER,
CITY OF JERSEY CITY ET AL., DEFENDANTS.

In re apportionment of Public Service Electric and Gas Company moneys.

THE BOROUGH OF BERGENFIELD ET AL., PETITIONERS,
v. J. H. THAYER MARTIN, STATE TAX COMMISSIONER,
CITY OF JERSEY CITY ET AL., DEFENDANTS.

In re apportionment of New Jersey Bell Telephone Company moneys.

Argued April 4, 1941—Decided May 15, 1941.

Before Justices CASE, DONGES and HEHER.

For the applicants, *William Newcorn.*

For the City of Jersey City and the Mayor and Council of the City of Hoboken, *Edward P. Stout.*

The opinion of the court was delivered by

CASE, J. Again the restless question of the evaluations upon which the apportionment of the gross receipts tax is based and of the actual apportionment of that excise. The application is for a writ of *certiorari* to review the judgments of the State Board of Tax Appeals in dismissing two appeals by the present applicants from the acts of the State Tax Commissioner culminating in the apportionment of the 1937 moneys. More accurately, the attempted appeals were from alleged non-action of the commissioner; for the complaint was and is that the statute in providing that "The tax commissioner shall have power to inquire into, equalize and revise the valuations so returned" imposed a mandatory duty upon the commissioner to exercise that power, that the commissioner did not inquire into, equalize and revise the valuations and that the complaining municipalities were aggrieved in that he did not exercise it. The pertinent legislation was in *R. S.* 54:31, sections 1 to 15 inclusive, repealed by chapter 7, *Pamph. L.* 1938, approved February 25th, 1938. The statute required the assessors in the several taxing districts to make and file with their county boards of taxation a return of the value of the pertinent corporate property and that such county boards should certify and transmit to the State Tax Commissioner a copy of each return so filed; that the commissioner should have power to inquire into, equalize and revise the values so returned so as to secure an equitable and fair valuation and apportionment of the franchise tax upon a uniform basis of valuation among the various districts entitled thereto; that he should apportion the proceeds of the franchise tax among the various taxing districts in proportion to the value of the property "as shown by the statements so filed with the commissioner;" that the amount so assessed and apportioned should be certified in writing to the respective collectors of taxes; and that each collector, within five days after such notification, should render to each affected corporation a statement in writing showing the amount of the franchise tax to be paid him in accordance with that ascertainment. The tax paying corporations were directed by the

statute to pay the respective amounts within thirty days after the date of the certification of the apportionment thereof.

On June 14th, 1938, the applying municipalities filed two petitions of appeal from the 1937 apportionment; one of them concerned the Public Service Electric and Gas Company moneys and the other the New Jersey Bell Telephone Company moneys. The State Board dismissed both petitions upon the ground that the 1938 repealer had deprived the board of jurisdiction to entertain appeals relating to the 1937 apportionment. We pass that point and come to our decision upon more fundamental grounds; nevertheless we note that the complaining municipalities did not pursue that prompt action which was said in *Hoboken* v. *Martin,* 121 *N. J. L.* 214, to be appropriate in proceedings which interfere with the smooth course of the distribution and use of the apportioned funds.

At the inception of the legislation in 1900 the apportionment was controlled by the figures shown in the filed assessors' statements. There was no power of inquiry, equalization or revision. Chapter 195, *Pamph. L.* 1900. Three years later (chapter 142, *Pamph. L.* 1903) the State Board of Assessors—the state tax body as then constituted—with which the district assessors' statements were filed was given "the power to inquire into, equalize and revise the valuations returned to them in said statement by the local assessors of the various taxing districts * * * so as to secure an equitable and fair valuation and apportionment of said franchise tax upon a uniform basis of valuation between the various taxing districts entitled thereto," and that authority came down intact and in those words to the State Tax Commissioner. We do not understand that an inquiry into or an equalization or revision of the assessors' returns was ever made annual routine under the cited legislation. The magnitude of the task and the incidental pitfalls find illustration in our decisions, as *West Orange* v. *State Board of Tax Appeals,* 115 *N. J. L.* 396; *affirmed,* 116 *Id.* 414; *Hoboken* v. *Martin,* 123 *Id.* 442. The statute in terms conferred the power to inquire into, equalize and revise; there can be no doubt about that; but under our construction a municipality had need to evoke that jurisdiction before it could establish error in non-action. The

statute clearly fixed the dates for the successive steps in the procedure leading up to the apportionment. February 28th in each year was the final day for the certification and transmittal from the several county boards to the State Tax Commissioner of the assessors' returns; and May 1st for the apportionment and certification by the Tax Commissioner. Prompt ascertainment during the interim by any municipality of the certifications from the several county boards to the Tax Commissioner would have disclosed the data upon which, in the absence of revision, the fund would be prorated and would have enabled the municipality forthwith to raise an issue with respect thereto. The municipalities which, on June 14th, 1938, filed their petitions of appeal—within time as, for the purpose of this decision, we shall assume—and which now apply to us for a writ of *certiorari* to review the dismissal of those petitions had done nothing to invoke the exercise by the Tax Commissioner of the jurisdiction which the statute conferred. We conclude that there was nothing from which the municipalities could appeal and that the petitions were properly dismissed.

The application for a writ of *certiorari* is denied, without costs.